UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------X
LINDA BENJAMIN,                    :

            Plaintiff,             :

    -against-                      :

THOMAS CARUSONA,                   :
CHRISTOPHER BENNETT,               :
and GURNEY'S INN CORP.             :
LIQUIDATING TRUST,                 :
                                   :
            Defendants,            :
                                   :
    -and-                          :
                                   :
GURNEY'S INN RESORT                :
& SPA LTD.,                        :
                                   :
            Nominal Defendant.     :
------------------------------x
```

**09 CIV 9722**

**VERIFIED COMPLAINT**

ECF CASE



Plaintiff, Linda Benjamin, by and through her attorneys, alleges the following upon personal knowledge as to her own acts, and upon information and belief as to all other matters based in part upon the investigation conducted by counsel:

### NATURE OF THE ACTION

1.   Plaintiff alleges that the defendant directors, in breach of their fiduciary duty of loyalty, subordinated the interests of nominal defendant Gurney's Inn Resort & Spa Ltd. ("Gurney's") and its Class A shareholders to the interests of the beneficial owners of Class B shares.  As a result of the directors' disloyalty, the corporation is incurring operating deficits for the benefit of such beneficial owners of Class B shares and the oppressed Class A shareholders are being forced to

surrender their equity interests rather than continue to bear the entire burden of subsidizing such operating deficits. Moreover, and in furtherance of their oppression of the Class A shareholders, the director defendants are concealing, from plaintiff, information that is necessary for plaintiff to properly fulfill her fiduciary duties.

2.   Plaintiff brings this action, pursuant to Section 720(b) of the New York Business Corporation Law ("BCL"), to redress the harm caused by defendants' breach of their fiduciary duties by, among other things:

(a) violating the express terms of the Interval Proprietary Lease between nominal defendant Gurney's and Gurney's Class A shareholders (the "Lease") by denying plaintiff her right, as the Class A director, to determine what services are necessary to maintain and manage Gurney's;

(b) withholding information concerning Gurney's and its business and financial affairs from plaintiff;

(c) failing and refusing to make a good faith effort to satisfy Gurney's mortgage obligations;

(d) failing and refusing to make a good faith effort to sell authorized but unissued Class A shares and reacquired Class A shares held in Gurney's treasury; and

(e) permitting the Montemarano/Cooper Family (as defined in paragraph 5, below) to continue their efforts to force

the Class A shareholders to surrender their shares and the appurtenant Leases by: (i) operating Gurney's at a loss and then assessing the Class A shareholders to compensate for the loss; (ii) engaging in widespread nepotism; and (iii) collecting payments on the Trust Mortgage (as defined in paragraph 7, below) far higher than that contractually permissible.

3.   Plaintiff seeks: (a) a declaration that defendants have violated and/or aided and abetted the breach of their fiduciary duties; (b) a preliminary and permanent injunction prohibiting defendants from interfering with plaintiff's right, pursuant to Section 3(e) of the Lease, to control the level of services provided by Gurney's; (c) the removal of the individual defendants as directors of Gurney's, institution of a new election of directors, and appointment of a receiver for the management of Gurney's until a new election of directors is called and a new board organized; (d) an accounting by the individual defendants of their stewardship of Gurney's finances and assets; and (e) damages against defendants.

## THE PARTIES

4.   Plaintiff resides in Connecticut and is the only Class A director of Gurney's.  Plaintiff was elected to that position by Gurney's Class A shareholders on May 20, 2009. Defendants Thomas Carusona and Christopher Bennett comprise the other two members of Gurney's three-member board of directors.

3

5.    Defendant Thomas Carusona resides in New York and has served as a director of Gurney's for approximately the past ten years, having been appointed by Nicholas Montemarano's immediate survivors and extended family (collectively, the "Montemarano/Cooper Family") through their control over Gurney's Inn Corp. Liquidating Trust (the "Monte Trust"). Defendant Carusona has a beneficial interest in Gurney's Class B shares and serves as its President and Chairman of the board of directors. Defendant Carusona has acted as an attorney for Montemarano/Cooper Family interests and the Monte Trust.

6.    Defendant Christopher Bennett resides in New York and has served as a director of Gurney's since 2007, having been appointed by the Montemarano/Cooper Family through their control over the Monte Trust. Defendant Bennett has a beneficial interest in Gurney's Class B shares. Defendant Bennett also serves as an accountant for Montemarano/Cooper Family interests and the Monte Trust.

7.    Defendant Monte Trust, a New York trust, currently holds a second consolidated mortgage on Gurney's property (the "Trust Mortgage") in the amount of approximately $2.8 million, holds all 2,700,000 Class B shares, and alleges that it holds a future interest in approximately 61,250 unsold Class A shares. Because it appointed a majority of Gurney's directors, the Monte Trust has controlled Gurney's at all relevant times.  As the

4

holder of a majority of the interests in the Monte Trust, the Montemarano/Cooper Family directly controls the Monte Trust and therefore indirectly controls Gurney's and its management.  All major management positions are held by members of the Montemarano/Cooper Family.  The Monte Trust, as Gurney's controlling shareholder, owes fiduciary duties to Gurney's minority shareholders, i.e., the holders of Class A shares.

8.    Gurney's, on whose nominal behalf this action is brought, was formed on July 1, 1981 under the BCL.  Gurney's is located at 290 Old Montauk Highway, Montauk, New York 11954 (the same address used by the Monte Trust).  Gurney's primary sources of income included funds derived from the sale of unsold timeshare units and the collection of maintenance fees from owners of timeshare units, as well as revenue from the restaurant, spa, and rentals.  Gurney's filed for Chapter 11 bankruptcy in 1994 and was reorganized in 1999.

9.    Under the terms of the bankruptcy reorganization plan, the Montemarano/Cooper Family, through its control of the Monte Trust,  maintains voting control over the selection of two of the three members of the board until the Trust Mortgage is satisfied. As discussed in detail below, the failure to make any reasonable, good faith effort to pay off the Trust Mortgage has benefitted the Montemarano/Cooper Family and the Monte Trust rather than Gurney's or the Class A shareholders.

## JURISDICTION AND VENUE

10.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332, by virtue of diversity of citizenship and an amount in controversy exclusive of interest and costs, in excess of $75,000.  Plaintiff is a citizen of the State of Connecticut.  The individual defendants are citizens of the State of New York or of states other than Connecticut.  The Monte Trust is organized under New York law and operates in New York.  The nominal defendant is a New York corporation, having its principal place of business in New York.

11.  All of the defendants are subject to service in New York, and this Court therefore can obtain personal jurisdiction over them.

12.  Venue is proper in this District because all of the board of director meetings that are not held by telephone are held at the offices of Gurney's corporate counsel which are located in this District.

## FACTUAL ALLEGATIONS

13.  The patriarch of the Montemarano/Cooper Family, Nicholas Montemarano, began operating nominal defendant Gurney's as a hotel resort in 1956.

14.  Gurney's is a 109 unit, 137 room Atlantic Oceanfront resort, health and beauty spa, restaurant, and conference center located in Montauk, New York.

15. On May 15, 1982, Gurney's issued an Offering Plan (the "Offering Plan") to convert Gurney's from a vacation resort into a cooperative timeshare property by offering 51 weekly time sharing interests in units. According to the Offering Plan, the "principal purpose of this offering is the sale of cooperative apartments for use . . . as vacation homes by purchasers, for their own use and occupancy during vacation periods, with the ordinary concomitants of vacation home ownership subject to the unique features of time share cooperative ownership."

16. Gurney's Certificate of Incorporation provides for two classes of voting stock: 750,000 shares of Class A, $0.025 par value stock, and 2,700,000 shares of Class B, $0.01 par value stock. The issued and outstanding Class A stock is owned by the individual timeshare owners.

17. Purchasers of Gurney's timeshare units acquire a proprietary lease granting purchasers the right to use their units and Gurney's resort accommodations for a specified week of each calendar year. Ownership of these time-sharing units is also evidenced by the issuance of Class A shares of Gurney's stock to purchasers. Purchasers maintain their ownership interests in Gurney's units for a fifty-year term (with the right to elect to extend the term) by paying maintenance and assessment fees, and other charges, as set by Gurney's board of directors.

18.   The Montemarano/Cooper Family holds a majority of the interests in the Monte Trust.  The Monte Trust holds all of the 2,700,000 Class B shares.  Because Class A and B shareholders each have one vote per share, and generally vote together, the Montemarano/Cooper Family will prevail on all shareholder votes when the Class A and Class B shareholders vote together.

19.   As beneficial owners of a controlling amount of Class B shares of Gurney's, the Montemarano/Cooper Family, using the Monte Trust as the lever, has and will continue having control over Gurney's operations until the Trust Mortgage is satisfied in full.  Once the Trust Mortgage is satisfied, the Class B shares will lose all voting rights, and control over Gurney's operations will be transferred to the Class A shareholders.  Remarkably, after 27 years, there still has been no transfer of control of Gurney's from the Montemarano/Cooper Family to the Class A shareholders/timeshare owners.

20.   At all relevant times, the Monetemarano/Cooper Family and the Monte Trust, through their control of Gurney's management and board of directors, including the individual defendants, had total and unfettered control of all aspects of the operations of Gurney's.  Due to such control, the Monetemarano/Cooper Family and the Monte Trust were able to manipulate and utilize Gurney's assets as they saw fit without providing plaintiff or the Class A shareholders with a true accounting.

21.  Although the Class A shareholders had been given the
right by the Offering Plan to elect one of the three members of
the board of directors, Class A shareholders effectively were
prevented from exercising such right.  Consequently, the first
independent Class A director, the plaintiff, was not elected
until May 2009.

22.  Pursuant to the Offering Plan and Section 4.3 of the
First Amended Plan of Reorganization, as soon as the Trust
Mortgage has been satisfied, the Class A stockholders will obtain
full voting control over Gurney's board.  The Class B shares will
no longer have any voting rights, and all the Class B shares will
be cancelled.

23.  Aware of this, the Montemarano/Cooper Family, through
their control of Gurney's board of directors, including the
individual defendants, has engaged in a course of conduct
designed to prevent Gurney's from satisfying the Monte Trust.  In
furtherance of this scheme, the individual defendants, under the
control of the Montemarano/Cooper Family and the Monte Trust,
have economically coerced, and continue to economically coerce,
Class A shareholders to surrender their units, and thus their
voting rights, while refusing to spread the burden of assessments
by selling unsold units.  By operating Gurney's at a loss and
making it increasingly expensive for Class A shareholders to
continue holding their Class A shares, defendants are able to

ensure that the Monte Trust remains unsatisfied, thus maintaining the Montemarano/Cooper Family's controlling interest in Gurney's.

24.   For the year ended December 31, 2007, Gurney's incurred a net loss of $585,398.  For the year ended December 31, 2008, Gurney's incurred a net loss of $886,953.  Since 2008, Gurney's operating expenses have increased by over 28%.  At December 31, 2008, Gurney's had an accumulated deficit of $55,357,167. Moreover, Gurney's will face a minimum year-end operating deficit of $670,000 for 2009, though that deficit is expected to be much more due to an increase in the number of timeshare units surrendered by timeshare owners unable to pay the maintenance fees and special assessments charged to them.  Notwithstanding such deficits, the Monte Trust, acting through defendants Carusona and Bennett, authorized lucrative bonuses, increases in salaries, and perquisites for Montemarano/Cooper Family members.

25.   In order to cover these financial losses and shortfalls, the individual defendants have levied substantial special assessments and maintenance fees on the Class A shareholders.  In 2009, defendants are charging Class A shareholders a special assessment fee of $2.36 per Class A share owned, for a total of $650,000.  In 2008, defendants charged Class A shareholders two special assessments in part to cover Gurney's shortfalls, one for $2.26 per share for a total of $750,000 and another for $6.24 per share for a total of

$2,162,472.  These assessments would have been more than enough to satisfy the Trust Mortgage had defendants properly applied them towards paying off the Trust Mortgage.

26.  Maintenance fees have also been consistently increased. The maintenance fees charged to Class A shareholders, increased from $6.40 per share in 2002 to $7.70 per share in 2004 to $8.74 per share in 2007 to $10.98 per share in both 2008 and 2009. Since 2002, the maintenance fees charged to Class A shareholders have increased by over 76%.  In January 2009, the individual defendants also increased the daily rates charged to each Class A shareholder from $10.50 per day per unit owned to $15.00 per day per unit owned, an increase in the aggregate of approximately $95,486.

27.  As a consequence of increases in special assessments and maintenance fees, many Class A shareholders have been compelled to surrender their Class A shares, and Leases for the appurtenant timeshare units.  At the same time, the individual defendants have failed to make a reasonable effort to re-sell surrendered units or to sell previously unsold units.

28.  The diminishing ranks of timeshare owners is demonstrated by the amount of Class A shares outstanding. Gurney's originally issued 657,900 of its Class A shares. According to Gurney's financial statements at December 31, 2006, 2007, and 2008, the amounts outstanding of Class A shares were

11

the following: 367,850; 363,000; and 349,300, respectively.  At
this time, timeshare units are being returned or are delinquent,
in record numbers.  The holders of nearly 47% of the originally
sold Class A shares have given up their timeshares.  During the
three-year period 2006-2008, the holders of more than 5% of the
remaining solid nucleus of Class A shares have been forced to
give up their timeshares.

29.   The individual defendants' refusal to pay off the Trust
Mortgage and their failure and refusal to act reasonably in
obtaining buyers of unsold and surrendered units has
significantly increased the financial burden on the remaining
Class A shareholders.  The remaining Class A shareholders are now
responsible to pay the maintenance and assessments for the
returned and unsold shares, effectively causing the remaining
Class A shareholders to pay almost double maintenance, while the
Monte Trust pays nothing for its units; in fact, the timeshare
owners pay for the Monte Trust's units.

30.   Not only have the individual defendants permitted the
Montemarano/Cooper Family to mismanage and operate Gurney's at a
loss solely for their own benefit, but the individual defendants
have done so contrary to the express terms of the Lease contained
within the Offering Plan.  Section 3 of the Lease expressly
states that:

(a)   The Interval Lessor [i.e., Gurney's] shall at its expense use its best efforts to provide the following services: (1) maintenance and management of the resort accommodation; (2) heat, light, power, air conditioning and utilities, etc.; (3) comprehensive casualty, flood, liability, workmen's compensation and other insurance in types and amounts deemed necessary and acceptable by the directors; (4) check-in and check-out service; (5) valet parking; (6) courtesy car to and from local airport and railroad stations on check-in and check-out; (7) twenty-four hour security guards; (8) initial fixtures, furniture and linens described on inventory annexed as Exhibit B (inventory to be taken before and after each use of premises and will vary from unit to unit).

(b)   The Interval Lessor shall use its best efforts to provide the following services at the expense of the Interval Lessee: (1) daily maid/turndown service charged on per diem occupancy basis; (2) telephone and telegraph charged on local, long distance and all toll basis.

(c)   The Interval Landlord at its expense shall use its best efforts to provide the following basic spa services by way of a recreational lease between the Interval Lessor and other commercial tenants: (1) heated salt water pool facilities; (2) men's pavilion including sauna, steam room, Swiss shower, gymnasium and equipment, locker room; (3) women's pavilion including sauna, steam room, Swiss shower, gymnasium and equipment, locker room; (4) seasonal ice skating.

(d)   Other commercial lessees of the Interval Lessor shall provide the following services, to the extent practicable, to the general public and the Interval Lessee on a fee, a la carte basis (1) public restaurant, bar and beverage facilities; (2) seasonal public breach barge, beverage and food facilities; (3) public spa therapeutic treatments and facilities and plans; (4) public spa salon, Institut de Beaute.

**(e)   The covenants by the Interval Lessor herein contained are subject, however, to the discretionary power of the Directors elected by Class A stockholders to determine from time to time what services and what attendance shall be proper in the manner of maintaining**

>  **and operating the buildings and also what existing
>  services shall be increased, reduced, changed, modified
>  or terminated.** Notwithstanding the aforesaid, at all
>  times, directors may condition availability of such
>  facilities based on emergencies, strikes, non-
>  accessibility, acts of God, or fiscal problems brought
>  on by maintenance collection deficiencies.

(Emphasis added.)

31.  The Lease therefore invests plaintiff, as the Class A

director, with discretionary power over the maintenance and

management of Gurney's.  Yet, in spite of this explicit language,

the individual defendants have committed waste by permitting the

Montemarano/Cooper Family to exercise complete power and

authority over the operation and management of Gurney's and its

assets solely for the personal benefit of the Montemarano/Cooper

Family and the Monte Trust.

32.  In further breach of their fiduciary duty, the

individual defendants have permitted the Montemarano/Cooper

Family to engage in blatant nepotism in their operation and

administration of Gurney's.  Despite the increases in financial

losses and operating expenses suffered by Gurney's, the

individual defendants have not made reasonable efforts to reduce

costs or to engage new management.  Nevertheless, at the same

time, the individual defendants have consistently paid themselves

and members of the Montemarano/Cooper Family lucrative salaries,

bonuses, and other compensation packages.  These payments have

been made while the Class A shareholders were compelled to pay

over $3.5 million in special assessments during the last two years alone to cover the financial losses and budgetary shortfalls caused by defendants' mismanagement of Gurney's and waste of its corporate assets.  Moreover, defendants have directed Gurney's to pay the Monte Trust's legal expenses.

33.   The individual defendants have each been paid $2,000 per month in fees for serving on the board. Defendant Carusona has received, and continues to receive, an additional $2,500 per month since 2008, as chairman of Gurney's board of directors, totaling $4,500 per month plus expense reimbursements.  Defendant Carusona has also received consulting fees in the amounts of $25,531.00, $28,400.00, $49,300.00, and $30,500.00, for the years 2004, 2005, 2006, and 2007, respectively.

34.   Although defendant Carusona has received his compensation, he has explicitly directed, without explanation, that plaintiff be denied the same $2,000 per month director's fee as paid to the other directors serving on Gurney's board.

35.   The individual defendants have also permitted Gurney's to enter into consulting arrangements with two other corporations that are "related to" Gurney's through their ownership by members of the Montemarano/Cooper Family.  Amounts paid to these members of the Montemarano/Cooper Family were approximately $185,000 for the years ended December 31, 2008 and 2007.  Lola Cooper Monetemarano, owner of one of those two corporations, while

owning the controlling interest in the Monte Trust, received at least $135,000 per year plus expenses including, it is believed, the payment of an automobile lease while residing in Henderson, Nevada.

36.  The related party consulting agreements contain a five percent annual increase in the contracts through 2011.  The individual defendants also receive additional "consulting" fees for supposedly providing advice to Gurney's on various, undisclosed matters.

37.  In 2007, members of the Montemarano/Cooper Family received compensation of at least $817,022.43, including commissions and bonuses.  The director defendants have refused to disclose the compensation, commission, and bonuses paid to the Monetemarano/Cooper Family for the years 2008 and 2009.

38.  Gurney's has made payments to the Monte Trust far in excess of that required to be made pursuant to Section 4.3 of the First Amended Plan of Reorganization, either as interest or as additions to principal.

39.  The individual defendants have failed and refused to provide plaintiff or the other Class A shareholders with any information regarding: (1) why the individual defendants are entitled to an additional $2,000 per month in director compensation while that same compensation is denied to plaintiff as a board member; (2) the names of individuals who have entered

16

into the consulting agreements with Gurney's, for the years ended December 31, 2008, 2007, and 2006, their relationships to the Montemarano/Cooper Family, and the services that those individuals performed pursuant to those agreements, as well as copies of all such consulting agreements; (3) how any of the compensation paid to the three board members is or has been determined; and (4) the services provided by all board members who were paid fees for acting as "consultants" to Gurney's.

40. Moreover, the individual defendants have continuously refused to provide plaintiff with various books and records that she is entitled to as a director. Notably, the individual defendants have denied and continue to deny plaintiff's requests for the following documents during the relevant time period, among others: copies of board minutes, information regarding salaries, benefits, and other compensation paid by Gurney's to the Montemarano/Cooper Family (including copies of any contracts to which any member of the Montemarano/Cooper Family, or any affiliate thereof, is a party), board members, and other employees; payments made on the mortgages; agreements with beneficial owners of Class B shares; correspondence with real estate brokers in connection with the sale of Gurney's or its shares; documents related to the surrender or foreclosure of timeshare units; and all bankruptcy filings including exhibits.

17

41.   In furtherance of their scheme to deprive plaintiff of the books and records to which she is entitled as a director, defendants have intentionally conducted one or more board meetings without the plaintiff present, and subsequently, refused to provide plaintiff with the minutes of those meetings.  Despite being a director, plaintiff has only been permitted to attend one of the board's monthly board meetings since July 2009.  Further, Gurney's management has been directed by defendant Carusona not to provide plaintiff with any information and that all requests for information must be directed to him.

42.   In refusing to provide plaintiff, and the other Class A shareholders with material information regarding Gurney's operations and accounting to which they are entitled, defendants are forcing plaintiff, and Class A shareholders, to continue paying exorbitant maintenance and assessment fees without adequately disclosing to timeshare owners, how that money is being spent, or even if that money is being spent for the benefit of Gurney's and its timeshare owners.

43.   In sum, defendants, acting in bad faith, have acquiesced in the Montemarano/Cooper Family's deficient operation of Gurney's causing it to incur substantial losses in order to ensure that the Trust Mortgage cannot be satisfied and, consequently, that the Montemarano/Cooper Family maintains absolute control over the valuable property on which Gurney's is

18

situated.   In allowing the Montemarano/Cooper Family to engage in such misconduct detrimental to Gurney's and the Class A shareholders, defendants have violated their fiduciary duties and have permitted the waste of Gurney's assets.

## FIRST CLAIM FOR RELIEF
### (Against the Individual Defendants for Violation of BCL § 720)

44.   Plaintiff repeats and realleges each and every allegation set forth in this complaint.

45.   The individual defendants have breached their fiduciary duty of loyalty by managing the assets of Gurney's solely for the benefit of the Montemarano/Cooper Family and the Monte Trust and for committing corporate waste.

46.   As a result of the individual defendants' breaches of their fiduciary duty of loyalty, Gurney's has been damaged in an amount to be proved at trial.

47.   In addition, the individual defendants should be removed as directors  and a receiver appointed in their stead until a new board can be elected and qualified.

## SECOND CLAIM FOR RELIEF
### (Against All Defendants for Common Law Breach of Fiduciary Duty, Waste, and Oppression of Gurney's Class A Shareholders)

48.   Plaintiff repeats and realleges each and every allegation set forth in this complaint.

49.   The defendants have breached their fiduciary duties and failed to protect the corporate assets of Gurney's from loss or waste, or aided and abetted same, by: (1) refusing to permit plaintiff to determine the necessary services in violation of the Lease; (2) refusing to provide plaintiff with the corporate records to which she is entitled; (3) failing and refusing to make reasonable efforts to liquidate the Trust Mortgage; (4) causing Gurney's to incur unnecessary expenses and to suffer substantial financial losses; (5) failing and refusing to make reasonable efforts to obtain buyers for unsold and returned units; and (6) requiring current holders of units to pay excessive special assessments to cover Gurney's operating losses in order to force holders to surrender their units for the benefit of the Montemarano/Cooper Family and the Monte Trust.

50.   For reasons set forth above, Gurney's Class A shareholders had a reasonable expectation that their ownership interests in Gurney's time-sharing units would result in their receiving a reasonable monetary return or some other form of valuable consideration during the fifty-year term.   Thus, defendants' breaches of fiduciary duty, arising from their waste and misappropriation of Gurney's assets in order to enrich themselves and the Montemarano/Cooper Family at the expense of Gurney's Class A shareholders, oppressed Gurney's shareholders, and denied them their reasonable expectations.

51.  As a result of defendants' breaches of their fiduciary obligations, Gurney's has been damaged in an amount to be proved at trial.

52.  In addition, the individual defendants should be removed as directors  and a receiver appointed in their stead until a new board can be elected and qualified.

### THIRD CLAIM FOR RELIEF
### (Against All Defendants for Injunctive Relief)

53.  Plaintiff repeats and realleges each and every allegation set forth in this complaint.

54.  Plaintiff has no adequate remedy at law.

55.  Unless the individual defendants and the Monte Trust are enjoined from usurping the prerogatives of plaintiff, as the Class A director, the Lease will continue to be violated and Class A shareholders economically coerced into surrendering their shares.

WHEREFORE, plaintiff demands judgment, in plaintiff's favor and in favor of Gurney's, as appropriate, against both individual defendants, jointly and severally, and the Monte Trust, as follows:

A.   finding that the individual defendants and the Monte Trust have breached their fiduciary duties to Gurney's and its Class A shareholders and are jointly and severally liable for all damages caused by their actions;

21

B.    enjoining defendants from further breaches of their fiduciary duties and removing the individual defendants as directors; and permanently enjoining the Monte Trust from appointing any new members of the board;

C.    preliminarily and permanently enjoining defendants from interfering with plaintiff's right, pursuant to Section 3(e) of the Lease, to control the level of services provided by the nominal defendant;

D.    appointing a receiver for the management of Gurney's until two new board members are elected by the Class A shareholders;

E.    ordering the director defendants to provide an accounting of Gurney's assets and operations;

F.    ordering the director defendants to provide plaintiff with all documents she has previously requested;

G.    awarding Gurney's compensatory damages against the Monte Trust, in an amount to be determined at trial, for the amount of funds that the Monte Trust received from Class A shareholders in excess of what it was entitled to receive, together with pre-judgment and post-judgment interest at the maximum rate allowable by law;

H.    awarding plaintiff the costs and disbursements of this action, including reasonable allowances for attorneys' and experts' fees and expenses; and

22

I.    granting such other or further relief as may be just and proper under the circumstances.

Dated: November 20, 2009

HARWOOD FEFFER LLP

By:    _____
Joel C. Feffer
Daniella Quitt
488 Madison Avenue, 8th Floor
New York, New York 10022
Tel: (212) 935-7400
Fax: (212) 753-3630

Attorneys for Plaintiff

**VERIFICATION**

STATE OF CONNECTICUT )
COUNTY OF *Fairfield* )   ss.: *Weston*

Linda Benjamin, being duly sworn, deposes and says:

I am a plaintiff in the within action.  I have read the foregoing complaint and know the contents thereof; the same is true to my own knowledge, except as to the matters therein stated to be alleged on information and belief, and as to those matters I believe them to be true.

_____
Linda Benjamin

Sworn to before me this
*20* day of ~~October~~ *Nov*, 2009

_____
Notary Public

ELIZABETH LEE
*Notary Public*
My Commission Expires 09/30/2011