**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------x

LINDA BENJAMIN,                      :
                                     :
            Plaintiff,               :
                                     :       Case No.   09 CIV 9722  (RWS)
      -against-                      :
                                     :
THOMAS CARUSONA, CHRISTOPHER         :
BENNETT, and GURNEY'S INN            :
CORP. LIQUIDATING TRUST,             :
                                     :
            Defendants,              :
                                     :
GURNEY'S INN RESORT                  :
& SPA LTD.,                          :
                                     :
            Nominal Defendant.  :
------------------------------x


## MEMORANDUM OF LAW
## IN SUPPORT OF MOTION FOR INJUNCTIVE RELIEF


Harwood Feffer LLP
Joel C. Feffer
Daniella Quitt
488 Madison Avenue, 8th Floor
New York, New York  10022
Telephone:  (212) 935-7400
Facsimile:  (212) 753-3630

Attorneys for Plaintiff

### Table of Contents

**Page**

Table of Authorities  . . . . . . . . . . . . . . . . .  ii

Preliminary Statement  . . . . . . . . . . . . . . . . .  1

The Irreparable Harm  . . . . . . . . . . . . . . . . .  4

Summary Of The Action And Procedural History  . . . . . . . . .  7

Argument  . . . . . . . . . . . . . . . . . . . . . .  8

     I.    Plaintiff Satisfies The Requirements
           For Injunctive Relief . . . . . . . . . . . . . .  8

     II.   Defendants Are Not Entitled To Indemnification
           Under The Certificate Of Incorporation Or Bylaws  .  12

          A.    The Bylaws Do Not Permit Indemnification
               or Reimbursement of Expenses to
               Class B Directors . . . . . . . . . . . . . .  12

          B.    Defendants' Proposed Amendments are Improper .  17

Conclusion  . . . . . . . . . . . . . . . . . . . . .  19

## Table of Authorities

**Cases**                                                                   **Page**

Adelphia Recovery Trust v. Bank of Am.,
    390 B.R. 80 (Bankr. S.D.N.Y. 2008) . . . . . . . . . . . 15

Amusement Indus. v. Citigroup
    Global Market Realty Corp.,
    2009 Bankr. LEXIS 3941
    (Bankr. S.D.N.Y. Dec. 15, 2009) . . . . . . . . . . . 8-9

Beal Sav. Bank v. Sommer,
    8 N.Y.3d 318, 834 N.Y.S. 2d 44 (2007) . . . . . . . . 19

Cenveo Corp. v. Diversapack LLC,
    No. 09 Civ. 7544 (SAS),
    2009 U.S. Dist. LEXIS 41535 (S.D.N.Y. Oct. 1, 2009) . . 10

Cohen v. Seward Park Hous. Corp.,
    2005 N.Y. slip op. 506140
    (Sup. Ct. N.Y. County Apr. 18, 2005) . . . . . . . . . 14

Drobbin v. Nicolet Instrument Corp.,
    631 F. Supp. 860 (S.D.N.Y. 1986) . . . . . . . . . . . . 9

Fe Bland v. Two Trees Mgmt. Co.,
    66 N.Y.2d 556, 498 N.Y.S. 2d 336 (1985) . . . . . . . 14-15

Grand River Enter. Six Nations, Ltd. v. Pryor,
    481 F.3d 60 (2d Cir. 2007) . . . . . . . . . . . . . . 11

In re WorldCom Inc.,
    352 B.R. 369 (Bankr. S.D.N.Y. 2006) . . . . . . . . . 15

Johnson Controls, Inc. v. A.P.T. Critical Sys.,
    323 F. Supp. 2d 525 (S.D.N.Y. 2004) . . . . . . . . 16-17

Johnson v. Kay,
    860 F.2d 529 (2d Cir. 1988) . . . . . . . . . . . . . 14

Mishkin v. 155 Condo.,
    2 Misc. 3d 1001A, 784 N.Y.S.2d 921
    (Sup. Ct. N.Y. County Feb. 19, 2004) . . . . . . . . . 14

Reuters, Ltd. v. United Press Int'l, Inc.,
    903 F.2d 904 (2d Cir. 1990) . . . . . . . . . . . . . 11

Rodriguez ex rel. Rodriguez v. DeBuono,
        175 F.3d 227 (2d Cir. 1999) . . . . . . . . . . . . . 8

Shapiro v. Cadman Towers Inc.,
        51 F.3d 328 (2d Cir. 1995) . . . . . . . . . . . . . 8

SimplexGrinnell LP v. Integrated Sys. & Power, Inc.,
        642 F. Supp. 2d 167 (S.D.N.Y. Mar. 31, 2009) . . . . 15, 16

Street v. Vitti,
        685 F. Supp. 379 (S.D.N.Y. 1988) . . . . . . . . . 9, 11

Suchodolski Assocs. Inc. v. Cardell Fin. Corp.,
        No. 03 Civ. 4148 (WHP),
         2004 U.S. Dist. LEXIS 1427
        (S.D.N.Y. Feb. 3, 2004) . . . . . . . . . . . 8, 9, 10-11

Third Church of Christ v. City of New York,
        617 F. Supp. 2d 201 (S.D.N.Y. 2008) . . . . . . . . . . 9

Wisdom Imp. Sales Co., L.L.C. v. Labatt Brewing Co.,
        339 F.3d 101 (2d Cir. 2003) . . . . . . . . . . . 15-16

Zino Davidoff SA v. CVS Corp.,
        571 F.3d 238 (2d Cir. 2009) . . . . . . . . . . . . . 8

**Statutes & Regulations**

Bus. Corp. L. § 713 et seq. . . . . . . . . . . . . . . 17

Bus. Corp. L. § 720(b) . . . . . . . . . . . . . . 1-2, 10

Bus. Corp. L. § 725(b)(2) . . . . . . . . . . . . . . . 17

Plaintiff respectfully submits this Memorandum in support of her motion for an order: (1) enjoining defendants Carusona and Bennett from seeking any indemnification, advancement of expenses, or other payment or reimbursement from nominal defendant Gurney's[1] for fees and expenses, including attorneys' fees, in connection with this litigation; (2) enjoining nominal defendant Gurney's from paying any indemnification, advancement of expenses, or other payment or reimbursement for fees and expenses, including attorneys' fees to any person or entity in connection with this litigation; (3) enjoining defendants Carusona and Bennett, and nominal defendant Gurney's from taking any action to amend either the Bylaws or Certificate of Incorporation of Gurney's; and (4) ordering such other and further relief as may be just and proper.

## Preliminary Statement

Extraordinary relief is necessary in order to prevent defendants (representing Class B shareholders) from converting this very lawsuit, which seeks to stop their egregious scheme to force out all of the Class A shareholders, into a vehicle to advance such scheme.

Plaintiff is a director of Gurney's and commenced this action against her two fellow directors and the Monte Trust for, among other things, violation of New York Business Corporation

---

[1]   All terms defined in the accompanying Declaration of Linda Benjamin (the "Moving Dec.") have the same meaning in this Memorandum.

Law ("BCL") § 720(b) for breach of fiduciary duty, as more particularly described in the verified complaint.

The underlying facts are set forth in detail in the accompanying Moving Declaration and will not be repeated. As described therein, the extraordinary relief requested by plaintiff is necessary to ameliorate the harm caused by threatening letters sent to the Class A shareholders by or on behalf of defendants. The relief sought is necessary, as well, to prevent further subversion of Gurney's corporate governance structure by defendants' proposed amendments to Gurney's charter documents.

As relevant to the pending application, Gurney's, a timeshare cooperative corporation, has a peculiar structure. Defendant Monte Trust, the purchase money second mortgagee, controls Gurney's through its ownership of all of the authorized and outstanding 2,700,000 Class B shares. The Monte Trust, in turn, is controlled by the Montemarano/Cooper Family, descendants of the person who sponsored the cooperative conversion of Gurney's 28 years ago. The Monte Trust's ownership of the Class B shares provides it with the ability to appoint a majority of the board of directors. The timeshare owners originally purchased 657,900 of the authorized 750,000 Class A shares but, at December 3, 2009, the number of outstanding Class A shares had been reduced to 278,100. That the Class B shares control

2

Gurney's board of directors, while the Class A shares are responsible for paying all of Gurney's expenses, presents an opportunity for chicanery to which the Montemarano/Cooper Family has been all too willing to avail itself.

As explained in the Moving Declaration, the reason for the huge decrease in outstanding Class A shares (and the corresponding surrender of units by timeshare owners), is the, thus far, successful scheme by the Montemarano/Cooper Family and their minions (including the individual defendants), to take advantage of their control of Gurney's board to saddle the Class A shares with unreasonable expenses. Among the facets of this scheme are the following:

1.    Defendants ignore the provisions of paragraph 3(e) of the Lease which, in order to control the expense for which the Class A shareholders are responsible, gives the Class A director control over the level of services provided by Gurney's. Moving Dec., ¶¶ 6 and 12(a).

2.    The Montemaramo/Cooper Family engages in rampant nepotism at the expense of Gurney's. Id. at ¶¶ 12(b) and (c).

3.    There is no effort to resell the hundreds of thousands of Class A shares surrendered by disillusioned timeshare owners. As a result, and as at December 3, 2009, 42% of the originally issued Class A shares pay 100% of the expenses. Id. at ¶ 12(d).

4.    Gurney's has been overpaying the Monte Trust's purchase money second mortgage.  Id. at ¶ 12(e).

5.    Defendants Carusona and Bennett have marginalized plaintiff to such a degree, that she is a director in name only. Id. at ¶ 17.

The cumulative effect of the foregoing has resulted in the Class A shares being burdened by enormous "special assessments" and significant increases in maintenance and daily charges.  Id. at ¶ 13.

### The Irreparable Harm

In response to this lawsuit, defendants have embarked upon a campaign which threatens to saddle the Class A shareholders with all of the defense costs despite unambiguous language in Gurney's Bylaws to the contrary.  Paul Monte, Gurney's General Manager and a member of the Montemarano/Cooper Family, sent a letter to the Class A shareholders telling them that "all of the costs of this litigation and associated indemnifications will be paid by Gurney's and ultimately the Class A shareholders" and "it is very likely that the costs of Ms. Benjamin's litigation will result in a special assessment later this year."  Id. at ¶ 17(e) and Exhibit F.  Defendant Carusona added to the misinformation.  On January 12, 2010, he sent a letter to Class A shareholders stating that "this destructive litigation . . . has already cost Gurney's tens of thousands of dollars" and "will probably result

4

in a special assessment unless withdrawn soon." Id. and Exhibit
G.

The allegation that Gurney's is responsible to indemnify
defendants Carusona and Bennett is incorrect.  Article SEVENTH of
Gurney's Bylaws, unambiguously provides that indemnification for
Class B directors-shareholders (i.e., defendants Carusona and
Bennett) "shall be paid exclusively from the proceeds of the
original stock offering." Id. at 18 and Exhibit E, Article VII.
Those proceeds went through Gurney's as a mere conduit for
corporations owned by the Montemarano/Cooper Family.  Clearly,
the logic is that as these directors are appointed to protect the
interests of the Montemarano/Cooper Family and the Monte Trust,
the beneficiaries of such services should be the source of any
indemnification.

The Monte and Carusona letters have been effective; many of
the remaining Class A shareholders are seriously considering
giving up and surrendering their shares.  Id. at ¶ 19.

A second prong of defendants' response to this lawsuit is to
call a special shareholders' meeting in order to seek
authorization to (1) further amend Gurney's Certificate of
Incorporation to eliminate director personal liability for breach
of the duty of care, and (2) further amend Gurney's Bylaws to
increase the size of the board of directors.  Defendants propose
that the Class A and Class B shares vote together, thereby

insuring that the shareholders will adopt the resolutions because of the overwhelming  number of Class B shares (all of which are owned by the Monte Trust).  Gurney's board approved the proposals on January 21, 2010.  Moving Dec., ¶ 24.  A copy of defendants' draft Information Statement is annexed to the Moving Dec. as Exhibit I.

There are a number of reasons why the meeting should not take place.  First, the law pursuant to which defendants want to amend the Certificate of Incorporation to eliminate director liability for breach of the duty of care was adopted in 1987.  It is curious why, after 23 years, defendants believe that now is the time to act, especially as any such change can not be retroactive, it cannot benefit defendants Carusona and Bennett. Second, the proposal to amend the Bylaws to add additional directors is a not very subtle attempt to create "independent" directors, probably to facilitate self-dealing arrangements or other nefarious activities.  See id., ¶ 25.

More importantly, however, any amendments to Gurney's charter documents will destroy the carefully crafted relationship between the Class A shares and the Class B shares which exists as a result of the interplay of the provisions of the offering plan, the Reorganization Plan, and Gurney's charter documents (i.e., its Certificate of Incorporation and Bylaws).

In connection with Gurney's cooperative conversion, Article SEVENTH of Gurney's Certificate of Incorporation was amended specifically to prevent any amendment to Gurney's Bylaws until _after_ all of the Class B shares have been cancelled, _i.e._, the Class B shares cannot implement any amendment to the Bylaws. Compare _id._, Exhibit A, ¶ NINTH, with Exhibit B, paragraph FOURTH(b).  The Bylaws itself prohibits any amendment until "[s]ubsequent to cancellation of all Class B stock . . . ." _Id.,_ Exhibit E, Article XII.

## Summary Of The Action And Procedural History

This action was commenced on November 23, 2009.  (Docket No. 1.)  Defendants Carusona's and Bennett's time to answer has not yet expired pursuant to Stipulation dated January 4, 2010. (Docket No. 10.)  Defendant Monte Trust's counsel refused to accept service and although counsel filed notices of appearance, and plaintiff has been advised that an individual believed to be a trustee of the Monte Trust has been served, plaintiff is, as of yet, unaware of the Monte Trust's position on whether it was served.  In any event, the Monte Trust is neither an officer nor director of Gurney's and, thus, not a necessary party with respect to the injunctive relief plaintiff now seeks.  A scheduling conference is scheduled for March 31, 2010.

7

## Argument

### I.   Plaintiff Satisfies The Requirements For Injunctive Relief

To obtain a preliminary injunction, a plaintiff must show: "(1) the likelihood of irreparable injury in the absence of such an injunction, and (2) either (a) likelihood of success on the merits *or* (b) sufficiently serious questions going to the merits to make them a fair ground for litigation plus a balance of hardships tipping decidedly in the movant's favor." Zino Davidoff SA v. CVS Corp., 571 F.3d 238, 242 n.3 (2d Cir. 2009) (emphasis added).

Because irreparable harm "is 'the single most important prerequisite for the issuance of a preliminary injunction,'" the "'moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered.'" Rodriguez ex rel. Rodriguez v. DeBuono, 175 F.3d 227, 233-34 (2d Cir. 1999) (citations omitted). Irreparable harm is an "injury for which a monetary award cannot be adequate compensation." Suchodolski Assocs. Inc. v. Cardell Fin. Corp., No. 03 Civ. 4148 (WHP), 2004 U.S. Dist. LEXIS 1427, at *9 (S.D.N.Y. Feb. 3, 2004).   In order to show irreparable harm, the injury must be "neither remote, nor speculative, but actual and imminent." Shapiro v. Cadman Towers Inc., 51 F.3d 328, 332 (2d Cir. 1995).  However, at the same time, "[a]n alternate monetary remedy must be actually and not theoretically

8

available to a plaintiff to undermine a harm's irreparability." Amusement Indus. v. Citigroup Global Market Realty Corp., 2009 Bankr. LEXIS 3941, at *47 (Bankr. S.D.N.Y. Dec. 15, 2009).[2]

Here, because of the rapid pace at which Class A shareholders are surrendering their shares and units, irreparable injury should be uncontroversial. Defendants have already threatened the Class A shareholders with the specter of enormous legal fees and additional "special assessments." See Moving Dec., Exhibits F and G. As the Class A shareholders' interest in the timeshares is unique, money damages cannot compensate them. Deprivation of an interest in real property has been found to constitute irreparable harm. See, e.g., Third Church of Christ v. City of New York, 617 F. Supp. 2d 201, 215 (S.D.N.Y. 2008) (church faced irreparable harm because absent relief it would be unable to maintain its operating expenses and be forced to sell its building).

---

[2]   See also Drobbin v. Nicolet Instrument Corp., 631 F. Supp. 860, 912 (S.D.N.Y. 1986) ("Where a plaintiff's injury is theoretically compensable in money damages, but as a practical matter, the defendant would not or could not respond fully for those damages, preliminary injunctive relief has been deemed necessary to protect plaintiff from irreparable injury."); Suchodolski, 2004 U.S. Dist. LEXIS 1427, at *13 (where alleged harm was loss of plaintiffs' shares of company stock and plaintiffs' ability to participate in the business of the company, holding that "[t]he dilution of a party's stake in, or a party's loss of control of, a business constitutes irreparable harm"); Street v. Vitti, 685 F. Supp. 379, 384 (S.D.N.Y. 1988) (finding irreparable harm where forced sale of plaintiffs' shares would "destroy their voice in management").

In "determining whether a plaintiff has demonstrated a likelihood of success on the merits of the "ultimate case, a court is not called upon finally to decide the merits of the controversy.  It is necessary only that the court find that the plaintiff has presented a strong prima facie case to justify the discretionary issuance of preliminary relief."  Cenveo Corp. v. Diversapack LLC, No. 09 Civ. 7544 (SAS), 2009 U.S. Dist. LEXIS 41535, at *20 (S.D.N.Y. Oct. 1, 2009)(quoting Gibson v. U.S. Immigration & Naturalization Serv., 541 F. Supp. 131, 137 (S.D.N.Y. 1982)).  Plaintiff's complaint demonstrates that she is likely to succeed on the merits of her claims alleging violation of BCL Section 720(b) and breach of fiduciary duty, waste, and oppression by defendants.

In addition, plaintiff has raised sufficiently serious questions going to the merits of her claims to make them a fair ground for litigation.  See Suchodolski, 2004 U.S. Dist. LEXIS 1427, at *13-14 ("plaintiffs have raised sufficiently serious questions going to the merits of their breach of fiduciary duty claim to make them a fair ground for litigation" where plaintiffs raised question of whether certain actions taken by defendant in connection with a sale of stock ownership, including whether steps defendant took with respect to due diligence were reasonable, because "[a] determination of reasonableness is a

paradigmatic question of fact, and can seldom be decided on a preliminary motion such as this").

The balance of hardships faced by the parties tips heavily in favor of granting plaintiff a preliminary injunction because allowing defendants to cause the Class A shareholders to finance their defense to this action will likely seal the fate of the remaining Class A shareholders. See Suchodolski, 2004 U.S. Dist. LEXIS 1427, at *15 (finding balance of hardships tips in plaintiffs' favor where "[a]bsent an injunction, plaintiffs will lose their shares in [company stock] and their right to participate in the business"); Street, 685 F. Supp. at 385 (finding balance of hardships favors plaintiffs where "[w]ithout an injunction, plaintiffs risk losing . . . their rights to manage the company, review corporate books and records, and protect their ownership interests").

In determining whether a plaintiff has met the prerequisites for obtaining a preliminary injunction, the district court has "wide discretion in determining whether to grant a preliminary injunction." Grand River Enter. Six Nations, Ltd. v. Pryor, 481 F.3d 60, 66 (2d Cir. 2007); see also Reuters, Ltd. v. United Press Int'l, Inc., 903 F.2d 904, 907 (2d Cir. 1990) ("Whether a preliminary injunction should issue or not rests in the discretion of the district court . . . ."). Here, maintenance of the status quo during the pendency of the litigation will

preserve the rights of the oppressed Class A shareholders and

allow defendants either to attempt to resolve their differences

with their directors' and officers' liability insurance carrier

or secure indemnity from the party which should provide it – the

Monte Trust.

**II.   Defendants Are Not Entitled To Indemnification**
**Under The Certificate Of Incorporation Or Bylaws**

    **A.   The Bylaws Do Not Permit Indemnification or**
       **Reimbursement of Expenses to Class B Directors**

Article SEVENTH of Gurney's Certificate of Incorporation

provides that Gurney's "*may* indemnify its officers and directors

to the extent permitted, and in the manner provided by law."

(Emphasis added.)   The operative term is "may" not "shall."

Moving Dec., Exhibit A.   The Bylaws evidence Gurney's

implementation of Article SEVENTH.   Indemnification is dealt with

in Article VII of the Bylaws which provides, in full, as follows:

> Section 1.   To the extent allowed by
> law, the Corporation shall indemnify any
> person, made a party to an action by or in
> the right of the Corporation to procure a
> judgment in its favor by reason of the fact
> that he, his testator or, intestate, is or
> was a director or officer of the Corporation,
> against the reasonable expenses, including
> attorneys' fees, actually and necessarily
> incurred by him in connection with the
> defense of such action, or in connection with
> an appeal therein, except in relation to
> matters as to which such director or officer
> is adjudged to have breached his duty to the
> Corporation, as such duty is defined in
> Section 717 of the Business Corporation Law.
> To the extent allowed by law, the Corporation
> shall also indemnify any person made, or

12

threatened to be made, a party to an action
or proceeding other than one by or in the
right of the Corporation to procure a
judgment in its favor, whether civil or
criminal, including an action by or in the
right of any other corporation, domestic or
foreign, which he served in any capacity at
the request of the Corporation by reason of
the fact, that he, his testator or, intestate
was a director or officer of the Corporation
or served it in any capacity against
judgments, fines, amounts paid in settlement,
and reasonable expenses, including attorneys'
fees actually and necessarily incurred as a
result of such action or proceeding, or any
appeal therein, if such director or officer
acted, in good faith, for a purpose which he
reasonably believed to be in the best
interests of the Corporation and, in criminal
actions or proceedings, in addition, had no
reasonable cause to believe that his conduct
was unlawful. <u>The cost of such
indemnification, including back-up insurance,
for directors or officers who acted as such
while Class B shareholders, shall be paid
exclusively from the proceeds of the original
stock offering</u>.

Nothing contained in this provision
shall limit any right to indemnification to
which any director or any officer may be
entitled by contract or under any law now or
hereinafter enacted.

<u>See</u> Moving Dec., Exhibit E.   (Emphasis added.)

Board minutes prepared by defendants or their agents state

the individual defendants are also Class B shareholders.   <u>See</u>

<u>id.</u>, Exhibit H, last page.   Thus, the last sentence of the first

paragraph of Article VII of the Bylaws unambiguously prohibits

indemnification to the Class B directors as the

Montemarano/Cooper Family received "the proceeds of the original

13

stock offering," not Gurney's.  When the authors of the Plan of
Reorganization wanted to amend the Bylaws, they knew how to do
it.  See id., Exhibit D, pp. 19-20.  They chose not to amend
Article VII.

The Bylaws constitute a contract with the shareholders, "and
are, as all contracts, to be construed in a manner giving effect
to all their terms."  Mishkin v. 155 Condo., 2 Misc. 3d 1001A,
784 N.Y.S.2d 921, 921 (Sup. Ct. N.Y. County Feb. 19, 2004)
(citing Lesal Assocs. v. Board of Mgrs., 309 A.D.2d 594, 765
N.Y.S.2d 352 (1st Dept. 2003)); Cohen v. Seward Park Hous. Corp.,
2005 N.Y. slip op. 506140 (Sup. Ct. N.Y. County Apr. 18, 2005)
(Bylaws of a condominium constitute a contract with the unit
owners.  See also Johnson v. Kay, 860 F.2d 529 (2d Cir. 1988)
(In affirming district court's granting of preliminary relief,
the Second Circuit acknowledged that a union's bylaws constitute
a contract between the union and its members.).

It is also well established that:

> The relationship between the
> shareholder/lessees of a cooperative
> corporation and the corporation is determined
> by the certificate of incorporation, the
> corporation's bylaws and the proprietary
> lease under which a particular apartment is
> occupied, subject, of course to applicable
> statutory and decisional law. Inseparably
> joined, neither the corporate nor the
> leasehold attributes of the relationship can
> be viewed in isolation from one another
> (Matter of State Tax Commn. v. Shor, 43 NY2d
> 151, 157). Even as to such normally corporate
> matters as the authority of the board of

> directors, therefore, it is not just the
> bylaws that are determinative; the relevant
> provisions of the related documents must be
> read together (<u>Brennan v Breezy Point Coop.</u>,
> 63 NY2d 1022, 1025; 4B Powell, Real Property
> para. 633.4).

<u>Fe Bland v. Two Trees Mgmt. Co.</u>, 66 N.Y.2d 556, 563, 498 N.Y.S.

2d 336, 340 (1985).

The Plan of Reorganization is also a contract.  <u>In re</u>

<u>WorldCom Inc.</u>, 352 B.R. 369, 377 (Bankr. S.D.N.Y. 2006)

(citations omitted) ("Court must interpret the provisions of the

Plan . . ., a task akin to interpreting a binding contract"); <u>see</u>

<u>also</u> <u>Adelphia Recovery Trust v. Bank of Am.</u>, 390 B.R. 80, 88

(Bankr. S.D.N.Y. 2008) ("[t]he terms of a confirmed plan of

reorganization are binding on parties to the plan").  In

analyzing the Plan, "'all documents which were confirmed together

to form the contract' are added to the Plan itself."  <u>In re</u>

<u>WorldCom Inc.</u>, 352 B.R. at 377 (citations omitted).

Under New York law, "if a contract is straightforward and

unambiguous, its interpretation presents a question of law for

the court to be made without resort to extrinsic evidence."

<u>SimplexGrinnell LP v. Integrated Sys. & Power, Inc.</u>, 642 F. Supp.

2d 167, 189 (S.D.N.Y. Mar. 31, 2009) (citing <u>LaSalle Bank Nat'l</u>

<u>Ass'n v. Nomura Asset Capital Corp.</u>, 424 F.3d 195, 205 (2d Cir.

2005)).  <u>See</u> <u>also</u> <u>Wisdom Imp. Sales Co., L.L.C. v. Labatt Brewing</u>

<u>Co.</u>, 339 F.3d 101, 109 (2d Cir.  2003) (holding that under New

York's principles of contract construction, a written agreement

15

between parties is "to be construed as a whole, giving full meaning and effect to all unambiguous terms and provisions therein according to their plain meaning and the parties' intent").

A "determination of whether contract language is unambiguous is made by the court with reference to the contract alone." SimplexGrinnell, 642 F. Supp. 2d at 189 (quoting Waldman ex rel. Elliott Waldman Pension Trust v. Riedinger, 423 F.3d 145, 149 (2d Cir. 2005)). Language is "unambiguous if it has a definite and precise meaning, unattended by the danger of misconception in the purport of the [contract] itself, and concerning which there can be no reasonable basis for a difference of opinion." SimplexGrinnell, 642 F. Supp. 2d at 189 (quoting Metro. Life Ins. Co. v. RJR Nabisco, Inc., 906 F.2d 884, 889 (2d Cir. 1990)).

"'Language whose meaning is otherwise plain is not ambiguous merely because the parties urge different interpretations in the litigation.'" SimplexGrinnell, 642 F. Supp. 2d at 189-90. In Johnson Controls, Inc. v. A.P.T. Critical Sys., 323 F. Supp. 2d 525, 539 (S.D.N.Y. 2004), the court interpreted the contract terms in dispute based on their "plain meaning," holding that the fact that a party "'offers a different interpretation for this clear provision does not render it ambiguous so as to warrant a trial. The task of the court is to enforce the plain meaning of an unambiguous agreement rather than to accept a construction

that would render a purposeful provision of the contract meaningless.'" (Internal citation omitted.)  Here, that leads to one conclusion, no indemnification or reimbursement.

In any event, BCL § 725(b)(2) provides that there can be no indemnification where, among other things, "indemnification would be inconsistent with a provision of . . . a by-law . . . ."  As a procedural matter, advancement of expenses is not self-operative but should require a board resolution authorizing the action. Interested transactions between a director and the corporation are governed by BCL § 713 which requires either approval of non-interested directors or the shareholders.  Assuming the individual defendants cannot obtain either, but vote their own advancement of expenses, the burden switches to them to "establish affirmatively that the contract or transaction was fair and reasonable as to the corporation . . . ."  BCL § 713(b).

**B.   Defendants' Proposed Amendments are Improper**

The Bylaws provide that they may only be amended "<u>subsequent to cancellation</u> of all Class B stock."  Specifically, the Bylaws state the following:

ARTICLE XII

Amendments

> Section 1.  Subsequent to cancellation of all Class B stock, these By-laws may be amended, enlarged or diminished either (a) at any shareholders' meeting by vote of shareholders owning two-thirds of the amount of the outstanding shares, represented in

17

person or by proxy, provided that the
proposed amendment or the substance thereof
shall be inserted in the notice of meeting or
that all of the shareholders present in
person or by proxy, or (b) at any meeting of
the Board of Directors by a majority vote,
provided that the proposed amendment or the
substance thereof shall be inserted in the
notice of meeting or that all of the
Directors are present in person, except that
the Directors may not repeal a By-law
amendment adopted by the shareholders as
provided above.

Moving Dec., Exhibit E.  As the Class B shares have never been

cancelled, any action to amend the Bylaws at this time is

improper.

Furthermore, and as discussed above, the Certificate of

Amendment of the Certificate of Incorporation provides in Article

Fourth(b) as follows:

Article NINTH of the Certificate of
Incorporation is amended to read as follows:

"NINTH:     Subsequent to
cancellation of all Class B shares, the By-
Laws of the Corporation may be amended,
enlarged or diminished, either (a) at any
shareholders' meeting by vote of the
shareholders owning two-thirds of the amount
of the outstanding shares, represented in
person or by proxy, provided that the
proposed amendment or the substance thereof
shall have been inserted in the notice of
meeting or that all of the shareholders be
present in person or by proxy, or (b) at any
meeting of the board of directors by a
majority vote, provided that the proposed
amendment or the substance thereof shall have
been inserted in the notice of meeting or
that all of the directors are present in
person, except that the directors may not
repeal a By-Law amendment  adopted by the

18

> shareholders as provided above." [Emphasis
> added.]

Moving Dec., Exhibit B at 3.  The phrase "[s]ubsequent to
cancellation of all Class B shares" did not exist in the original
Certificate of Incorporation and was added by amendment in
connection with the cooperative conversion (undoubtedly on the
insistence of the Attorney General's Office) to protect the Class
A shareholders.  Any amendment to the Certificate of
Incorporation which, directly or indirectly, amends Gurney's
Bylaws, would render this provision of the Certificate of
Incorporation, i.e., the contract between the parties,
meaningless.  See, e.g., Beal Sav. Bank v. Sommer, 8 N.Y.3d 318,
324-25, 834 N.Y.S. 2d 44, 44 (2007) (citations omitted) (read as
a whole so as not to render a portion meaningless).  As detailed
above, defendants cannot unilaterally change the contract amongst
the parties, i.e., the Bylaws.  It would completely destroy the
balance between the Class A and Class B shareholders and
compromise, if not destroy, the valuable property interests of
the Class A shareholders.

### Conclusion

For all the foregoing reasons, plaintiff respectfully
requests that the Court enter an order:  (1) enjoining defendants
Carusona and Bennett from seeking any indemnification,
advancement of expenses, or other payment or reimbursement from

nominal defendant Gurney's for fees and expenses, including attorneys' fees, in connection with this litigation;

(2) enjoining nominal defendant Gurney's from paying any indemnification, advancement of expenses, or other payment or reimbursement for fees and expenses, including attorneys' fees to any person or entity in connection with this litigation;

(3) enjoining defendants Carusona and Bennett, and nominal defendant Gurney's from taking any action to amend either the Bylaws or Certificate of Incorporation of Gurney's; and

(4) ordering such other and further relief as may be just and proper.

Dated: February 8, 2010

HARWOOD FEFFER LLP

By: _____
    Joel C. Feffer
    Daniella Quitt
    488 Madison Avenue, 8th Floor
    New York, New York  10022
    Telephone:  (212) 935-7400
    Facsimile:  (212) 753-3630

    Attorneys for Plaintiff

21