UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

LINDA BENJAMIN,

                  Plaintiff,              09 Civ. 9722

    -against-                     OPINION

THOMAS CARUSONA, CHRISTOPHER
BENNETT, and GURNEY'S INN CORP.
LIQUIDATING TRUST,

                  Defendants,

GURNEY'S INN RESORT & SPA LTD.,

            Nominal Defendant.

------------------------------------X

A P P E A R A N C E S:

        Attorneys for Plaintiff

        HARWOOD FEFFER LLP
        488 Madison Avenue, 8th Floor
        New York, NY  10022
        By:  Joel C. Feffer, Esq.
             Daniella Quitt, Esq.

        Attorneys for Defendants

        EATON & VAN WINKLE LLP
        3 Park Avenue
        New York, NY  10016
        By:  Ted G. Semaya, Esq.
             Joseph T. Johnson, Esq.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: ____
DATE FILED: 4/22/10

**Sweet**, D.J.

Plaintiff Linda Benjamin ("Benjamin" or the "Plaintiff") has moved under Fed. R. Civ. P. Rule 65 for a preliminary injunction to bar the Defendants Thomas Carusona ("Carusona") and Christopher Bennett ("Bennett") (collectively, the "Defendant") from seeking indemnification for expenses in connection with this action, to bar the nominal Defendant Gurney's Inn Resort & Spa Ltd. ("Gurney's") (collectively, the "Defendants") from paying any such indemnification, and to bar the Defendants from taking any action to amend either the bylaws or certificate of incorporation of Gurney's.  Upon the findings and conclusions set forth below, the motion to enjoin indemnity is denied, and the motion to bar amendment to the bylaws and certificate of incorporation is denied.


**The Parties**

Benjamin is a Connecticut resident and the only Class A director of Gurney's.

Carusona and Bennett are the other two members of the board of directors of Gurney's.  Gurney's was formed on

1

July 1, 1981 and is located at 290 Old Montauk Highway, Montauk, New York 11954. According to the Complaint, Gurney's primary sources of income included funds derived from the sale of unsold timeshare units and the collection of maintenance fees from owners of timeshare units, as well as revenue from the restaurant, spa, and rentals. Gurney's filed for Chapter 11 bankruptcy in 1994 and was reorganized in 1999. (Compl. ¶ 8.)

## **Prior Proceedings**

Benjamin filed her Complaint on November 23, 2009, alleging a breach of fiduciary duty under Section 720(b) of the New York Business Corporation Law ("BCL") and seeking a declaratory judgment, an injunction, the reorganization of the board of directors, an accounting and damages. (Compl. ¶¶ 2, 3.) The Complaint alleges a first cause of action for violation of BCL § 720 (Compl. ¶¶ 44-47), a second cause of action for common law breach of fiduciary duty (Compl. ¶¶ 48-52) and a third cause of action for an injunction (Compl. ¶¶ 53-55).

The instant motion was heard on February 12, 2010.

2

**The Facts**

The facts have been set forth in the affidavits submitted by the parties and are not in dispute except as noted below.

Benjamin was elected to the board as a Class A director in 2009.  She has been a timeshare owner since the late 1980s.

Gurney's was incorporated as a timeshare cooperative corporation in 1981 and first sold timeshare units in 1982.  The Class A timeshare owners paid approximately $50,000,000 to buy their units as a result of the conversion of Gurney's into cooperative ownership.

Gurney's Certificate of Incorporation, as amended, provides for a capital structure consisting of 750,000 Class A shares and 2,700,000 Class B shares.  Most of the authorized Class A shares were issued to timeshare owners and all of the authorized Class B shares were issued to the holders of the purchase money mortgage, including

Gurney's Inn Corp. Liquidating Trust (the "Liquidating Trust").

Following Gurney's conversion to cooperative status, Gurney's board of directors was controlled by its institutional mortgagee until 1991. From that point on, the Liquidating Trust held all 2,700,000 Class B shares and controlled Gurney's board of directors. According to Benjamin, the Liquidating Trust, in turn, was and is controlled by the Montemarano/Cooper Family. (In 1990, Nicholas Montemarano, the now-deceased family patriarch, married Lola Cooper; this group is referred to as the "Montemarano/Cooper Family".)

Although holders of the Class B shares now control the board of directors, the holders of outstanding Class A shares are required to pay all of Gurney's expenses. The form timeshare Interval Proprietary Lease (the "Lease") provides, in paragraph 3(e), the following:

> The covenants by the Interval Lessor herein contained are subject, however, to the discretionary power of the Directors elected by Class A stockholders to determine from time to time what services and what attendance shall be proper in the manner of maintaining and operating the buildings and also what existing services shall be increased, reduced, changed, modified or terminated. Notwithstanding the aforesaid, at

4

all times, directors may condition availability
of such facilities based on emergencies, strikes,
non-accessibility, acts of God, or fiscal
problems brought on by maintenance collection
deficiencies.

According to Benjamin, following Gurney's
cooperative conversion in 1982, the Montemarano/Cooper
Family retained operating control over Gurney's. In 1994,
Gurney's filed for protection under Chapter 11 of the
Bankruptcy Code and emerged from Chapter 11 in 1999.

The First Amended Plan of Reorganization (the
"Reorganization Plan") provided that:

(a)   holders of Class A and Class B shares
retained their interests unimpaired (section 3.2);

(b)   the institutional first mortgage was changed
to a $3,500,000 principal, ten-year note, bearing interest
at 10% per annum (section 4.2);

(c)   the purchase money second mortgage, held by
the Montemarano/Cooper Family through the Liquidating
Trust, was reduced to a principal of $2,700,000, with
repayment of principal and payment of interest restricted

and possibly abated in the event Gurney's operating cash
flow in insufficient, as defined in the Reorganization Plan
(section 4.3);

(d)  the Liquidating Trust also received "a
future interest in 50% of all unsold shares and proprietary
leases, which future interest shall mature on the earlier
of the date of the sale of the real property or December
31, 2032" (section 4.8); and

(e)  Article III, Section 2 of Gurney's Bylaws
was amended to permit the Class A shareholders to elect one
director and the Class B shareholders the right to appoint
the remaining directors (section 6.2(b)); no other
amendment to the Bylaws was authorized.

Gurney's property occupies more than ten acres of
valuable oceanfront property in Montauk, Long Island.
Property owned by Bernard Madoff, situated nearby and
consisting of only one and a half acres, recently sold for
$9,400,000.

According to Benjamin, the Liquidating Trust, as
holder of all of the Class B shares, through its appointed

directors, sought to force holders of Class A shares to surrender their shares as well as the appurtenant Leases in order to permit a sale of Gurney's.

According to Paul Montemarano ("Montemarano"), the general manager of Gurney's, Nicholas Montemarano acquired Gurney's in 1956 and owned it as a family business until it was converted to time-share ownership (one of the first in New York State) in 1981 to obtain financing, under an Offering Plan.  According to Montemarano, 85% of the units were sold over the succeeding nine years, resulting in 536,000 Class A shares.  Because the amount of outstanding Class A shares was reduced as timeshare owners abandoned their interests, at the end of 2008 349,300 Class A shares remained outstanding.  Timeshare owners are assessed maintenance and special assessments on a per-share basis.  Shares are assigned on a particular week and unit. According to Montemarano, Nicholas Montemarano transferred all 2,700,000 Class B shares to Carusona and Bennett in 2007, before he died.

Also, according to Montemarano, active opposition to the management was initiated in 2008 formally by Ms.

7

Patricia Boffa, a timeshare owner and Class A shareholder, by the formation of Gurney's Timeshare Owners, Inc.

On November 28, 2008, the office of the Attorney General sent a letter to counsel for Gurney's delineating certain of the rights of the Class A shareholders and requesting that a letter be sent to the shareholders advising them of these rights and requesting various communications and notices.

According to Montemarano, Gurney's has increased its revenues since emerging from bankruptcy but is in need of capital improvement of $20 million, assessments are contemplated and interest in purchasing the property is being explored. According to Montemarano, the underwriters of the Directors and Officers policy obtained by Gurney's have declined coverage for the expenses and any liability of Carusona and Bennett.

Bylaws amendments are contemplated to provide that Class A and Class B shareholders vote together as a single class and that Gurney's may indemnify its directors.

8

Montemarano wrote to the Class A shareholders on
December 30, 2009 with respect to this action, stating:

> As it now stands, all the costs of this
> litigation and associated indemnification will be
> paid by Gurney's and ultimately to the Class A
> shareholders.
>
> * * *
>
> It is very likely that the costs of Ms.
> Benjamin's litigation will result in a special
> assessment later this year.

On January 12, 2010, Carusona wrote to the
shareholders stating:

> The Bylaws of Gurney's are clear.  The Directors
> of the corporation are to be indemnified for the
> complete cost of the litigation, including all
> attorneys' fees.  Linda Benjamin's lawsuit will
> result in additional expenses to this corporation
> and will probably result in a special assessment
> unless withdrawn soon.

According to Bennett, Gurney's has sufficient
cash flow to maintain its operations through October, 2010,
and that board has not considered imposing a special
assessment to indemnify the directors.

Both Carusano and Bennett have given undertakings
to repay any indemnification in the event that they are
found not to be entitled to indemnification.

9

According to Benjamin, the Montemarano/Cooper
Family has received improper benefits, and the Defendants
are acting to promote the surrender of Class A Shares.

## **The Preliminary Injunction Standard**

A party seeking a preliminary injunction must
show:  "(1) the likelihood of irreparable injury in the
absence of such an injunction, and (2) either (a)
likelihood of success on the merits or (b) sufficiently
serious questions going to the merits to make them a fair
ground for litigation plus a balance of hardships tipping
decidedly toward the party requesting the preliminary
relief."  Zino Davidoff SA v. CVS Corp., 571 F.3d 238, 242
(2d Cir. 2009) (quoting Fed. Express Corp. v. Fed.
Espresso, Inc., 201 F.3d 168, 173 (2d Cir. 2000)).

Because irreparable harm "is 'the single most
important prerequisite for the issuance of a preliminary
injunction,'" the "'moving party must first demonstrate
that such injury is likely before the other requirements
for the issuance of an injunction will be considered.'"
Rodriguez ex rel. Rodriguez v. DeBuono, 175 F.3d 227, 233-

10

34 (2d Cir. 1999) (citations omitted).  To establish

irreparable harm, the injury must be "neither remote, nor

speculative, but actual and imminent."  Shapiro v. Cadman

Towers, Inc., 51 F.3d 328, 332 (2d Cir. 1995).  In

addition, the injury "must be one requiring a remedy of

more than mere money damages."  Third Church of Christ v.

City of New York, 617 F. Supp. 2d 201, 215 (S.D.N.Y. 2008)

(quoting Tucker Anthony Realty Corp. v. Schlesinger, 888

F.2d 969, 975 (2d Cir. 1989)).

## Immediate and Irreparable Injury Has Not Been Established

It is Benjamin's contention that the Defendants

have threatened the Class A shareholder with the imposition

of legal fees and additional "special assessments" and that

since the Class A shareholders' interest in the timeshares

is unique, money damages cannot compensate them.

Deprivation of an interest in real property has been found

to constitute irreparable harm.  See, e.g., Third Church of

Christ, 617 F. Supp. 2d at 215 (church faced irreparable

harm because absent relief it would be unable to maintain

its operating expenses and be forced to sell its building).

11

She also contends that the course of conduct of the Defendants will accelerate the rate at which the Class A shareholders will abandon their units, thereby increasing her aliquot share of the maintenance and aiding the Defendants' efforts to sell the property.

## a. The Request to Enjoin Director Indemnification

Benjamin's principal contention is that Article VII of the Bylaws of the corporation provides that the cost of indemnification of the directors "shall be paid exclusively from the proceedings of the original stock offering" and that the Montemarano/Cooper Family received such proceeds. According to Montemarano, the Montemarano/Cooper Family did not receive the proceeds but in view of the bankruptcy, the proceeds of the offering no longer exist as an identifiable fund.

However, the Article VII Bylaws also state:

Nothing contained in this provision shall limit any right of indemnification to which any director or any officer may be entitled to by contract or under any law now or hereinafter enacted.

12

Under BCL § 723(c), a company may advance defense costs to a sued director upon the posting of an undertaking. In the event of a finding against a director of bad faith or dishonesty, however, no indemnification may be had and any advanced expenses must be repaid to the company. BCL §§ 721, 725(a). Carusona and Bennett have provided the undertaking required under BCL §§ 723(c) and 725(a) for advancement of defense costs, namely, that they will repay Gurney's if it is ultimately proven that they are not entitled to indemnification.

In addition, the Class A shareholders under Paragraph 3(e) of the Lease are granted control of the services for which they are liable.

Under these circumstances, Benjamin has failed to establish any basis for an assessment of such immediacy as to require injunction. It is presumed without deciding that such assessment, if made, would be challenged, raising a serious question as to its enforcement.

13

b.    The Request to Enjoin Bylaw Amendment

Similarly, Benjamin has not established the
immediacy of the suggested bylaw amendment.  In view of
what appears to be the requirement in Article XII providing
for amendment only after the cancellation of all Class B
stock, again serious questions would be presented upon an
effort to adopt the suggested bylaw amendment.

Furthermore, it is the position of Benjamin that
the Certificate of Amendment of the Certificate of
Incorporation in Article Fourth(b) contains a similar
requirement.  The phrase "[s]ubsequent to cancellation of
all Class B shares" did not exist in the original
Certificate of Incorporation and was added by amendment in
connection with the cooperative conversion, presumably on
the insistence of the Attorney General's office, to protect
the Class A shareholders.  Any amendment to the Certificate
of Incorporation that would render this provision of the
Certificate of Incorporation meaningless would presumably
be subject to challenge as compromising the property
interests of the Class A shareholders.

14

However, on this record the immediacy of the requested injunction has not been established and the request will be denied.

It may be worth noting that since the economic interest of both sides to this dispute are involved, a resolution to the capital needs of Gurney's, sooner rather than later, would be in the interests of all concerned. A cooperative effort to that end might provide the best resolution of the instant controversy.

## Conclusion

The motion of Benjamin for injunctive relief at this time is denied.

So ordered.

New York, NY
April 2/ , 2010

ROBERT W. SWEET
U.S.D.J.

15